UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

[Filed Electronically]

| | |
|---|---|
| CHRISTOPHER L. PRINCE, and ) <br> BETSABE PUGA, Guardian ) <br> of C.W.P.P., a minor ) <br> ) <br>       PLAINTIFFS ) <br> v. ) <br> ) <br> WARREN COUNTY, KENTUCKY ) <br> Serve:    Mike Buchanon ) <br>            County Judge-Executive ) <br>            420 East 10th Ave., Suite 201 ) <br>            Bowling Green, KY  42101 ) <br> -and- ) <br> ) <br> STEPHEN HARMON, individually ) <br> Serve:    Warren County Regional Jail ) <br>            920 Kentucky Street ) <br>            Bowling Green, KY  42101 ) <br> -and- ) <br> ) <br> DEPUTY _____[1] CASEY, individually ) <br> Serve:    Warren County Regional Jail ) <br>            920 Kentucky Street ) <br>            Bowling Green, KY  42101 ) <br> -and- ) <br> ) <br> DEPUTIES JOHN and JANE DOE 1-15, ) <br> individually[2] ) <br> ) <br> -and- ) <br> ) <br> SOUTHERN HEALTH PARTNERS, INC. ) <br> Serve:    CT Corporation System ) <br>            4169 Westport Road ) <br>            Louisville, KY  40207 ) <br> -and- ) | CASE NO. 1:21-cv-00100-GNS |

---

[1] First name unknown at present.
[2] To be identified in discovery, and added as properly named Defendants in and served with an amended complaint.

|  |  |
|---|---|
| **BARRY DORITY, APRN, individually** | ) |
| Serve:   Warren County Regional Jail | ) |
|             920 Kentucky Street | ) |
|             Bowling Green, KY  42101 | ) |
| -and- | ) |
|  | ) |
| **SHELLY WEAVER, LPN, individually** | ) |
| Serve:   Warren County Regional Jail | ) |
|             920 Kentucky Street | ) |
|             Bowling Green, KY  42101 | ) |
| -and- | ) |
|  | ) |
| **ELYSIA FOLEY, LPN, individually** | ) |
| Serve:   Warren County Regional Jail | ) |
|             920 Kentucky Street | ) |
|             Bowling Green, KY  42101 | ) |
|  | ) |
|             **DEFENDANTS.** | ) |

# COMPLAINT

## I. Introduction

1. Plaintiffs Christopher L. Prince, and Betsabe Puga, Guardian of Mr. Prince's minor son, C.W.P.P., complain of the misconduct of Defendants named in the caption above. As more specifically set forth below, after his admission to the Warren County Regional Jail ("the Jail"), Mr. Prince began exhibiting the obvious signs and symptoms of a stroke that even laypeople know is a medical emergency requiring immediate, time-is-of-the-essence medical attention and treatment. Instead, Mr. Prince was subjected to Defendants' objectively unreasonable, incompetent, negligent and deliberately indifferent misconduct, and received no treatment (or treatment that was so cursory it amounted to no treatment at all, and may well have have made his condition even *worse*) *for more than 24 hours* after first exhibiting symptoms of a stroke. As a consequence, all opportunity to arrest the stroke or reverse its effects was lost, and Mr. Prince – who was talkative, opinionated, an active working man and a loving father -- is now profoundly

disabled, can no longer work, can no longer express himself, and can no longer support his five-year old son, C.W.P.P., or meaningfully participate in his life. It is the purpose of this action to recover the actual damages Mr. Prince and his son have sustained as a result of Defendants' misconduct, and punitive damages to punish Defendants' conduct and forever deter its repetition.

## II. Jurisdiction and Venue

2. Plaintiffs seek damages from Defendants under the Civil Rights Act of 1871, 42 U.S.C. §1983, for gross and unconscionable violations of the rights, privileges and immunities guaranteed Mr. Prince by the Eighth and Fourteenth Amendments to the Constitution of the United States. Accordingly, this Court has jurisdiction of this case pursuant to the provisions of 28 U.S.C. §§1331 and 1343. Plaintiffs also seek damages for negligence, and gross negligence. Warren County, Kentucky is the location of all acts pertinent to this suit, and venue is therefore proper in this Court.

## III. Parties

3. Mr. Prince is a resident of Warren County, Kentucky.

4. Betsabe Puga is Mr. Prince's former wife and Guardian of C.W.P.P., Mr. Prince's five-year old son, and they both reside in Warren County, Kentucky.

5. Defendant Warren County, at all times mentioned herein, employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, Jailer Stephen Harmon, and the medical staff and officers and employees of the Jail. Warren County was also statutorily responsible for the care and custody of inmates in its Jail, and contributed to, encouraged, implicitly authorized or approved of Mr. Prince's mistreatment as set forth below.

6.      Defendant Stephen Harmon was at all times mentioned herein acting as Jailer of Warren County, and as such established policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the medical staff and officers and employees of the Jail. Defendant Harmon was also statutorily responsible for the care and custody of inmates in the Jail, and contributed to, encouraged, implicitly authorized or approved of Mr. Prince's mistreatment as set forth below.

7.      Defendant Deputy (first name currently unknown) Casey and John and Jane Does 1-15 were at all times mentioned herein acting as Deputy Jailers at the Jail, did nothing to help Mr. Prince despite witnessing his distress, and knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved of Mr. Prince's mistreatment as set forth below.

8.      Defendant Southern Health Partners, Inc. ("SHP") at all times mentioned herein employed, was responsible for the establishment of policies either formally or by custom for, and was responsible for the employment, training, supervision and conduct of, the medical staff responsible for the inmates in the Jail, including but not limited to Barry Dority, who was an advanced practice registered nurse ("APRN"), and licensed practical nurses ("LPNs") Shelly Weaver and Elysia Foley.  As set forth below, SHP knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved of Mr. Prince's mistreatment as set forth below.

9.      Defendants Dority, Weaver, and Foley were at all times mentioned herein medical professionals employed or separately contracted by SHP to attend to the medical needs of inmates at the Jail.  Defendant Dority, as the Jail's APRN, "primary physician" of the Jail's inmates (including Mr. Prince), and "Medical Director" of SHP's operations at the Jail, was responsible for the establishment of policies either formally or by custom and practice for, and was responsible

4

for the training, supervision and conduct of, Defendant LPNs Weaver and Foley. All knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved of Mr. Prince's mistreatment as set forth below.

### IV. Nature of Defendants' Conduct

10. Defendants, individually and in conspiracy with one another, engaged in the conduct described below under color of the law of the Commonwealth of Kentucky and Warren County. The individual Defendants named above knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized or approved the conduct described below. The offenses described below resulted from the failure of Defendants Warren County, SHP, Harmon and Dority to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally or by custom to protect Mr. Prince's clearly-established constitutional rights. Defendants' conduct was intentional and grossly negligent, objectively unreasonable, indicated active malice toward Plaintiff and a total, deliberate and reckless disregard for and indifference to his life and his constitutional and common law rights, and justifies an award of punitive damages in addition to the actual damages his estate is entitled to recover.

### V. Facts

11. All reasonably intelligent adults know that a sudden, unexplained difficulty in speaking accompanied by dizziness and trouble walking is a sign of a stroke. Even if they did not interpret such symptoms as a sign of a stroke in particular, all reasonably intelligent adults would regard such signs as alarming and requiring immediate medical attention, and would transport the

individual exhibiting such signs and symptoms immediately to the nearest emergency room for prompt medical diagnosis and treatment.

12. However, as set forth below, owing to the practices and business models of Defendants Warren County and SHP, the individual Defendants have surrendered their common sense to routine customs and practices that violate written policies and have resulted, again and again, in personal injuries and the deaths or near deaths of numerous Kentuckians in their care and custody. Mr. Prince's is but the most recent, glaring example.

13. Mr. Prince was 49 years old when he was admitted to the Warren County Regional Jail on April 15, 2021. Throughout the events described below, he was a pretrial detainee who enjoyed a presumption of innocence, the bedrock of criminal justice in these United States.

14. On April 16, 2021, Mr. Prince informed Defendants that he took blood pressure medication and Eliquis, a medication used specifically to lower the risk of stroke. This information was documented in an electronic record available to Defendants SHP, Dority, Weaver, and Foley. However, Mr. Prince's high blood pressure and risk of stroke were left unmedicated.

15. The morning of April 19, 2021, Mr. Prince awoke, participated in head count at the Jail which required that the inmates stand to be counted, and then ate breakfast with his cellmates between 6 and 6:30 am. Soon thereafter, he began to experience and show obvious signs of dizziness and trouble speaking. Both Mr. Prince and his cellmates notified the Jail's security staff of the abrupt change in Mr. Prince's condition, but a nurse – Defendants Foley and/or Weaver -- was not summoned to Mr. Prince's cell until 8:10 am.

16. Most laypeople know that a stroke requires diagnosis and treatment *as soon as possible*. An intravenous injection of a recombinant tissue plasminogen activator (tPA) is the standard treatment for a stroke. An injection of tPA restores blood flow by dissolving the blood

clot causing the stroke. By quickly removing the cause of the stroke, it reduces its effects and can help people recover entirely.[3] However, tPA has to be administered within 4.5 hours of the first signs of a stroke to have any chance of working.

17. A nurse was not summoned to attend to Mr. Prince's signs and symptoms of a stroke for almost two hours.

18. At 8:10 am on April 19, Mr. Prince was personally and directly observed by Defendants Foley and/or Weaver, both licensed practical nurses ("LPNs"), having difficulty speaking and walking, and was transported to the Jail's medical clinic via wheelchair. As LPNs, neither Defendants Foley nor Weaver can diagnose or treat a patient's condition on their own. Despite the fact that the Bowling Green Medical Center is just 1.5 miles and a five-minute ride from the Jail, Defendants Foley and/or Weaver placed Mr. Prince in medical "observation" and called Defendant Dority who, without seeing Mr. Prince and relying entirely upon a telephonic report of an LPN's assessment of Mr. Prince's condition, ordered that Mr. Prince be given Clonidine, Lisinopril, and Aspirin to reduce his blood pressure. Such treatment, cursorily prescribed by Defendant Dority to Mr. Prince sight unseen, and without a thorough assessment, may well have exacerbated his injury.

19. Defendants Foley and/or Weaver then passively observed Mr. Prince deteriorate over the next 24 hours. A progress note by Defendant Foley at 5:32 pm on April 19 indicated that Mr. Prince was still having speaking difficulties. In addition, she personally observed Mr. Prince fall into a wall in his cell but noted that his "eyes [were] open to see that this nurse was watching him," which appears to indicate that Defendant Foley inexplicably and unjustifiably suspected Mr.

---

[3] https://www.mayoclinic.org/diseases-conditions/stroke/diagnosis-treatment/drc-20350119#:~:text=An%20IV%20injection%20of%20recombinant%20tissue%20plasminogen%20activator,up%20to%204.5%20hours%20after%20stroke%20symptoms%20started.

Prince was faking his condition. Defendant Foley went on to describe in her progress note her observation of Mr. Prince's obvious difficulty using his dominant right hand, and referenced a "piece of paper" that Defendant Weaver "had used [earlier] as [a] form of communication and evaluation." Mr. Prince was still not sent to the Hospital.

20. At 6:01 pm on April 19, Defendant Weaver discussed Mr. Prince's condition again with Defendant Dority over the telephone, and was instructed by Dority to continue "monitoring" Mr. Prince and to continue administering Clonidine to lower Mr. Prince's blood pressure.

21. At 9:02 am on April 20, more than 24 hours after Mr. Prince first exhibited the obvious signs and symptoms of a stroke, Defendants Foley and Weaver were again summoned to Mr. Prince's cell where they found him complaining of right-side pain and unable to straighten his right leg. At 9:12 am, they called Defendant Dority who finally ordered that Mr. Prince be emergently transported to the Hospital that was just five minutes away. But by that time, any attempt to alleviate the effects of Mr. Prince's stroke were futile.

22. Mr. Prince now has serious difficulty speaking and communicating his thoughts. His right hand is all but useless. He is effectively totally disabled and his efforts to communicate are lengthy, halting, often ineffective, and a source of extreme frustration. His close relationship with his five-year old son, who cannot yet comprehend what has happened to his father or why, has been severely compromised. Mr. Prince's sudden and profound disability is compounded by the severe and ongoing mental and emotional distress of his condition, which he retains the cognitive ability to comprehend along with its dire implications for his future.

23. SHP is a Chattanooga-based, for-profit jail health care company. Its policy, custom and practice is to maximize profit and minimize expense by staffing jails primarily with low-cost LPNs like Defendants Foley and Weaver, who are supervised by an "absentee" medical

director like Defendant Dority. For SHP's "medical directors" like Dority, the medical care of the inmates for whom they are the "primary physician" is secondary to convenience and profit, and in many instances amounts to abandonment. These practices have caused numerous deaths and near-deaths in jails throughout Kentucky resulting in almost a dozen lawsuits filed throughout the state and federal courts of Kentucky by the undersigned alone.

24. This case is now at least the ***fourth*** instance in which an inmate ***at the Warren County Regional Jail*** has died or almost died due to SHP's, and its employees and contractors', neglect of and/or deliberate indifference to an inmate's obviously serious medical condition. In *Finn v. SHP, et al.*, Case No. 1:10-CV-016 (W.D.Ky.), SHP's "medical director" (in that case, John Adams, MD, a physician under contract with SHP to serve as medical director of at least six jails while maintaining a "very busy family practice" in Franklin, Kentucky) was not made aware of an inmate struggling through alcohol withdrawal and *delirium tremens* in the Jail in March 2009 until after the inmate had died. In *Newell v. SHP, et al.*, an inmate almost died of a "massive" saddle pulmonary emboli after he had suffered at the Jail for almost two (2) months with shortness of breath, chest pain, and bloody sputum without the knowledge or involvement of Defendant Dority. Defendant Dority was again sued in *Martin v. SHP, et al.*, a case in which a young drug addict eventually succumbed after three-months in the Jail to the co-complicating conditions of diabetes and Addison's Disease without ever being seen and cursorily treated only once by Defendant Dority. Both *Newell* and *Martin* are currently awaiting trial in Warren Circuit Court.

25. These ongoing incidents demonstrate that Defendants Warren County, Harmon, and the Jail's employees have: (a) abdicated to SHP, its contractors and employees, Defendants Warren County, Harmon, and the Jail's employees' own independent statutory responsibility to care for the Jail's inmates' obviously serious medical needs; and (b) have utterly failed and refused

to exercise any meaningful supervision of SHP's operations in the Jail or the conduct of its employees and contractors, and are completely and deliberately indifferent to the consequences for the Warren County citizens in their care.

## VI. Causes of Action

### Count I

26. Defendants' conduct was intentional, objectively unreasonable, reckless, deliberate, wanton and/or malicious, and was indicative of their total, deliberate and reckless disregard of and indifference to Mr. Prince's life as well as his rights and the risk of harm to him occasioned by such conduct.

27. Plaintiffs believe and, after reasonable discovery, will show that Mr. Prince's treatment by Defendants was the result of policies, customs and practices of Defendants, either written or unwritten, and that such policies, customs and practices violated written policies and were the "moving force" behind his injury, pain, and suffering. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and objectively unreasonable disregard for and indifference to the lives and constitutional and common law rights of inmates at the Jail, including Mr. Prince, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

28. As a result of the foregoing, Mr. Prince, through Defendants' deliberately indifferent, objectively unreasonable, and grossly negligent -- if not reckless, intentional and/or malicious -- conduct, was subjected to cruel and unusual punishment and denied due process of law in violation of the Eighth and Fourteenth Amendments of the Constitution of the United States and the Civil Rights Act of 1871, 42 U.S.C. §1983.

### Count II

29. By virtue of the foregoing, the individual Defendants named above were negligent and grossly negligent.

30. By virtue of the foregoing, Defendants SHP, Dority, Weaver and Foley failed to meet the standard of care applicable to their respective medical positions in their care and treatment of Mr. Prince.

### VII. Damages

31. The extent of Mr. Prince's injury was entirely preventable, and he is therefore entitled to recover for the wanton and unnecessary physical and mental pain and suffering he has endured and will endure, and for the loss of his power labor and earn money. Also, C.W.P.P. is entitled to recover for the loss of his father's support, society, and companionship. Finally, Defendants' violations of Mr. Prince's constitutional and common law rights were cruel, malicious, and evinced a total and reckless disregard for his life and those rights, entitling Plaintiffs to recover punitive damages from Defendants in order to deter such conduct in the future.

**WHEREFORE**, Plaintiffs request a trial by jury, and further request that Mr. Prince and C.W.P.P. be awarded actual and punitive damages, pre- and post-judgment interest, costs, attorneys' fees pursuant to 42 U.S.C. §1988, and all other relief to which they are entitled under law or in equity.

Respectfully submitted,

/s/ Gregory A. Belzley
Gregory A. Belzley
gbelzley3b@gmail.com
Camille A. Bathurst
cbathurst3b@gmail.com
Aaron Bentley
abentley3b@gmail.com

Belzley, Bathurst & Bentley
P.O. Box 278
Prospect, KY  40059
502/292-2452

***Counsel for Plaintiffs***

Case 1:21-cv-00100-GNS-HBB  Document 1  Filed 07/06/21  Page 12 of 12 PageID #: 12